JOSEPH ROWAN and Others, and All Others Similarly Situated, Plaintiffs, *v.* JOHN POSSEHL, Individually, and as President of the International Union of Operating Engineers, etc., and Others, Defendants.

Supreme Court, Special Term, New York County, February 19, 1940.

*Isidore Beerman*, for the plaintiffs.

*Breed, Abbott & Morgan* [*Charles H. Tuttle* and *Thomas E. Kerwin* of counsel], for the defendants John Possehl and Frank A. Fitzgerald.

*Robert J. Fitzsimmons*, for the defendants Thomas J. Foley, William Helms and Joseph Fay.

BENVENGA, J. The complaint charges a conspiracy and prays that an injunction issue. The causes of action revolve around the adoption of a new constitution of the International Union of Operating Engineers. If the constitution was illegally adopted, the plaintiffs are entitled to the relief demanded; otherwise not.

It appears that in August, 1938, the executive board of the international union adopted a resolution approving a draft of the constitution and voted to submit it to a referendum vote of the members in good standing. Pursuant to the resolution so adopted, the general secretary-treasurer sent a copy of the resolution to the various locals, affiliated with the international, with instructions that a regular meeting be held for the purpose of voting on the question, and, in so voting, to use the ballots supplied for that purpose by the parent body.

The evidence shows that about 500 locals, comprising about 35,000 members, voted on the constitution and that the constitution was adopted by a vote of 30,975 as against 3,369 opposed; in other words, the referendum was carried by a vote of about ten to one.

There is no evidence as to how the referendum was actually conducted in all of the locals. The presumption of regularity, of course, applies. However, evidence was adduced as to the method employed in the four locals in and about the city of New York.

In Locals 14 and 15, ballots were not used, but a standing vote was taken at a regular meeting. In Local 30, ballots were used, but the voting was by mail. In Local 137, the voting was by ballot at a regular meeting, and in strict conformity with the method prescribed. In other words, three out of four of the metropolitan locals did not follow the prescribed mode.

Moreover, a tabulation of the votes cast by the entire membership shows that, in seven locals outside of New York, a unanimous vote was recorded in favor of the adoption of the constitution, while in two other locals the voting was almost unanimous. From this, an inference is sought to be drawn that the referendum was not regularly conducted; and, besides, from all the evidence adduced, it is urged that an inference may properly be drawn that, since the votes cast at the locals referred to constitute more than one-third of the entire vote recorded on the proposition, the referendum was conducted in a manner other than that prescribed by the resolution.

But while the referendum in some of the locals may have been irregularly held, in the sense that it was not conducted in accordance with the prescribed method, the plaintiffs have not sustained the burden of proving that the constitution was adopted as a result of conspiracy on the part of the defendants. On the contrary, I am satisfied, on the evidence, that the members in good standing freely and voluntarily voted overwhelmingly in favor of the adoption of the constitution. The question presented, therefore, is whether, by reason of the fact that the referendum may not have been regularly conducted by some of the locals, the constitution should be declared null and void and a new referendum held, notwithstanding the fact that an overwhelming majority of the membership voted for the constitution.

The resolution, as we have seen, required that the question be submitted to a referendum vote, " with the *usual* instructions and form of ballot," the instructions directing that " these ballots *and no others* must be used " in voting on the question.

But while the resolution required voting by ballot, the constitution then in force prescribed no particular or exclusive mode. If it did, then, of course, that mode would be mandatory and would have to be followed. (*Matter of Brunone* v. *Societa Mutuo Soccorso San Rocco Fra I Cittadini Di Palo Colle Bari*, 254 App. Div. 753.) But the constitution merely authorized the general secretary-treasurer to make rules expedient for the operation of the provisions relating to referendum, and gave such rules the force and effect of law " until changed by the convention or by the vote of the locals." (Art. XX, § 9.) There is no evidence that the general secretary-treasurer had promulgated any rule with reference to the referendum. Apparently, voting on other occasions had been conducted by ballot, and it was at least the sense of the executive board that the referendum in question should be conducted in customary manner.

Moreover, even if the requirement of the resolution and the instructions issued in accordance therewith be given the force and effect of a rule or statute, the locals, nevertheless, would not be

limited to that method exclusively, for, as we have seen, the constitution specifically provides that a rule is to be given the force and effect of law until changed by the vote of the locals. This would seem to give a local union the power to change the rule or waive the method prescribed by resolution in any given case. That there was a waiver of the method prescribed at least by some of the New York locals must be inferred from the action taken at the meetings of those locals.

Accordingly, it would seem that the method prescribed by the resolution of the executive board and the instructions of the general secretary-treasurer to the locals was not mandatory and exclusive, but merely directory, and that the failure to pursue the method prescribed does not invalidate the new constitution.

The complaint is dismissed. Settle judgment, findings of fact and conclusions of law.